# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### February 4, 2014 Session

## STATE OF TENNESSEE v. STEVEN R. BRYSON

**Appeal from the Circuit Court for Hardin County**
**No. 9495     C. Creed McGinley, Judge**

---

### No. W2013-00777-CCA-R3-CD  - Filed April 21, 2014

---

The Defendant-Appellant, Steven R. Bryson, was convicted by a Hardin County jury of aggravated sexual battery, a Class B felony. See T.C.A. § 39-13-504 (2011). The trial court sentenced him as a Range I, standard offender to eight years and six months in the Department of Correction. On appeal, Bryson argues that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in denying his motion for judgment of acquittal; and (3) the trial court committed plain error in its jury instructions. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Curtis F. Hopper, Savannah, Tennessee, for the Defendant-Appellant, Steven R. Bryson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Hansel J. McCadams, District Attorney General; and Ed N. McDaniel, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

A Hardin County Grand Jury returned a single-count indictment charging the Defendant-Appellant, Steven R. Bryson,[1] with aggravated sexual battery of M.S.,[2] the six-

---

[1] The Defendant is also referred to as "Stephen R. Bryson" elsewhere in the record. We use the name as reflected on the indictment.

[2] It is the policy of this court to refer to victims of sexual abuse and their family members by their
(continued...)

year-old victim in this case, occurring on June 2, 2011, in the Defendant's home. The following proof was adduced at trial.

**State's Proof.** T.D., the aunt of the minor victim, met the Defendant in 2009. In February 2011, T.D. and her two sons lived with her mother, M.T. The victim also lived with M.T., her maternal grandmother. T.D. became reacquainted with the Defendant when he was looking for someone to watch his children during the week while he worked. T.D. agreed to watch the Defendant's children in exchange for room and board for herself, her younger son, and the victim. This arrangement began the last week of May 2011, when school let out. T.D. described the Defendant as "a good father" and "clean and sober." She thought "he was a very respectful man."

T.D. testified that on the night of the offense, she left the Defendant's home to attend a meeting. While T.D. was gone, the Defendant was in charge of the children. She said the victim had never been left alone with the Defendant before. When she returned at 10:00 p.m., the Defendant was asleep and the children were awake in their rooms. T.D. stated that the following morning, the Defendant told her "something had broke his heart the night before" and that the victim "had told his daughter that he had touched her private." The Defendant told T.D. that he had talked to the victim and she had changed her story and had stated that "it might have been her brother."

T.D. was "shocked" and spoke to the victim alone after the Defendant had left for work. When asked whether something had happened the night before, the victim "immediately started crying." After speaking with the victim, T.D. called her mother, M.T., who then left work and picked up T.D. and all the children from the Defendant's home.

On cross-examination, T.D. testified that the mother of the Defendant's three children had passed away several years ago and that the Defendant was concerned about finding a babysitter whom he could trust to be clean and sober. T.D. agreed that she and the children had stayed at the Defendant's residence for several days without incident. She said that, after she had returned from her meeting on the night of the offense, the victim was playing with the other children and did not seem upset. T.D. stated that she and her mother spoke to the victim the morning after the offense, but they did not speak with the other children.

M.T., the victim's maternal grandmother and legal guardian, testified that she was familiar with the arrangement that her daughter, T.D., had made with the Defendant. M.T. said she had been counting on her daughter to be her babysitter for the summer and that the

---

[2](...continued)
initials.

victim also wanted to stay at the Defendant's home because other little girls would be there. After visiting the Defendant's house, M.T. opined that "it was a nice home" and agreed to let the victim stay there. The victim had been at the Defendant's residence for a week when M.T. received a phone call from her daughter, who was crying. Based on this call, she immediately left work and picked up T.D., the victim, T.D.'s younger son, and the Defendant's three children. M.T. spoke to the victim alone, explaining, "I put [the victim] in my lap and I asked her I said, just tell me what happened. And she did. And when I started to put her down she was crying." Once everyone was at her home, M.T. called the Department of Children's Services (DCS) office in Hardin County and in Nashville. She also filed a complaint with the Hardin County Sheriff's Department and took the victim to a forensic interview arranged by DCS. On cross-examination, M.T. testified that she did not speak with the other children because she did not want to upset them. She did not talk to the Defendant at any time about the incident.

Deputy Joey Hinson of the Hardin County Sheriff's Department testified that he received a complaint from M.T. on June 6, 2011 in reference to the Defendant. As a result, he made a report, provided the information to Investigator Stacy Moore, and had no further involvement in the investigation. Deputy Stacy Moore of the Hardin County Sheriff's Department was assigned the instant case and interviewed T.D. and contacted Ms. Frankie Stewart of Child Protective Services, who was already investigating the case. In addition, Deputy Moore interviewed the Defendant and contacted the District Attorney's Office.

The victim, age seven at the time of trial, testified that she lived with her "Memaw[,]" M.T., in May and June of 2011. During that time, she and her aunt, T.D., went to stay at the Defendant's house. She remembered staying over the first weekend and playing in the creek and doing puzzles with the other children. She also spent the night on several occasions during the week. The victim recalled that on Thursday night, her aunt was away from the house at a meeting. At one point that night, she was in the living room where the Defendant was sitting on the recliner watching television. She said the Defendant's daughter, Cassie, was also in the living room working on a puzzle. The victim testified that the Defendant asked her to get in his lap and then he picked her up. While she sat on his lap, the Defendant was seated "crisscross" in the recliner. The victim said she did not like it when he "rubbed [her] middle spot." When asked to describe the location of her "middle spot[,]" the victim was crying. She then pointed to her "middle spot" and indicated for the jury how the Defendant had rubbed her. She said the Defendant had touched her over her clothes and that he did not say anything while doing so. She also said the Defendant had not indicated that she was hurting his leg while she sat on his lap. After the Defendant touched her, the victim went upstairs to "go tell the girls." When she talked with the Defendant, "[h]e said he was sorry." The victim also told her aunt and her grandmother what had happened. She recalled talking to a forensic interviewer about the incident.

-3-

On cross-examination, the victim said she went downstairs to the living room with a kitten in her hands. She sat with the cat in the Defendant's lap for a very short period of time. She stated that she had talked with various adults about testifying at trial, including her grandmother, aunt, mother, and the prosecutor. When asked if she remembered what happened, the victim responded by crying. She agreed that she did not really remember what happened and that some people had told her what to say at trial.

On redirect examination, the victim said the adults she talked to about her testimony told her to tell the truth. She stated that she remembered what had happened to her and that no one told her to testify that the Defendant had rubbed her "middle spot."

At the close of the State's proof, the defense moved for a judgment of acquittal on the grounds that the State had failed to present proof that the contact was for the purpose of sexual arousal or gratification or that the Defendant had acted intentionally or knowingly. The trial court overruled the motion.

**Defense's Proof.** The Defendant elected not testify at trial. Cassie Bryson, the Defendant's nine-year-old daughter, testified on his behalf. On the night of the offense, she said she was in the living room watching television with her father when the victim came downstairs and jumped in the Defendant's lap while holding Cassie's kitten. She said the victim was in the Defendant's lap for "a minute or two." Cassie, who was sitting on the floor doing a puzzle, did not see anything happen while the victim was in the Defendant's lap. She also stated that the Defendant did not say anything. She acknowledged that although she was in the same room, she did not observe the entire incident. According to Cassie, the victim jumped out of the Defendant's lap and ran upstairs and told Cassie's older sister, April, about what happened. When Cassie went upstairs, she said the victim was still upset and told her, "'your daddy touch[ed] me somewhere.'" Cassie then went downstairs and confronted the Defendant. She testified that the victim did not say anything else for the rest of the evening. Cassie said the victim "act[ed] like her normal self" the following day and that she did not seem upset.

Based on the foregoing evidence, the jury found the Defendant guilty as charged of aggravated sexual battery. The trial court subsequently sentenced the Defendant as a Range I, standard offender to a term of eight years and six months in the Tennessee Department of Correction, to be served at 100 percent. After the denial of his motion for new trial, the Defendant filed a timely notice of appeal.

# ANALYSIS

**I. Sufficiency of the Evidence.** On appeal, the Defendant challenges the sufficiency of the convicting evidence. He argues that the State did not present any proof to establish that he had "unlawful sexual contact" with the victim. The State responds that the Defendant has failed to provide an adequate record and that this court should presume that there was sufficient evidence to support the jury's verdict. We agree that the Defendant has not met his burden in overcoming the presumption of guilt on appeal.

We begin our analysis of this issue by recognizing well established law concerning an appellate court's review of the sufficiency of the evidence. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury
> see the witnesses face to face, hear their testimony and observe their demeanor
> on the stand. Thus the trial judge and jury are the primary instrumentality of

justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). However, "[t]he jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)); State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). The court in Dorantes specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in Holland:

> "Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Dorantes, 331 S.W.3d at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)).

The Defendant was convicted of aggravated sexual battery. As charged in this case, the State was required to prove the "unlawful sexual contact with a victim by the defendant . . . [where] [t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4) (2012). "Sexual contact" is statutorily defined to include:

the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

Id. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" Id. § 39-13-501(2). "'Intentional' means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result[.]" Id. § 39-11-106(a)(18).

In challenging the sufficiency of the evidence, the Defendant does not dispute the fact that the victim is less than thirteen years old. However, he asserts that the State has failed to prove beyond a reasonable doubt that there was "unlawful sexual contact." To support this claim, the Defendant asserts that the record does not support a finding of an "intentional touching" because the touching was above the clothes, brief in duration, and the Defendant did not say anything while the victim sat in his lap. Next, the Defendant contends that there is nothing in the record to indicate what the victim's "middle spot" means. Finally, even if there was an intentional touching, the Defendant maintains that the State failed to prove that the contact was for the purpose of sexual arousal or gratification. In addition, the Defendant attacks the credibility of the victim, arguing that "she had been essentially 'coached' by several people before she testified and that she [didn't] really recall what happened."

Initially, we note that the appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). The scope of appellate review is limited to facts established in the record. Id. 13(c). "In the absence of an adequate record on appeal, we must presume that the trial court's ruling was supported by the evidence." State v. Bibbs, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991) (citing Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979); Vermilye v. State, 584 S.W.2d 226, 230 (Tenn. Crim. App. 1979)). Furthermore, Rule 36(a) of the Tennessee Rules of Appellate Procedure provides:

[R]elief may not be granted in contravention of the province of the trier of fact. Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.

Tenn. R. App. P. 36(a). Accordingly, it was incumbent upon the Defendant to provide this court with a complete record of what transpired at trial or to take action, such as objecting, if the victim had pointed to an area other than an "intimate part" as statutorily defined.

In State v. Ross Junior Graham, No. 01C01-9110-CC-00316, 1992 WL 300889 (Tenn. Crim. App. Oct. 22, 1992), perm. app denied (Tenn. Mar. 1, 1993), this court affirmed the defendant's aggravated sexual battery conviction where the record did not reflect the area of the body that the minor victim had pointed to at trial. The lead opinion considered the testimony to be sufficient to sustain the conviction, and the concurrence agreed with the result noting, "the deficiency in the record results in our presuming that the evidence was sufficient to support the jury verdict, which, itself, is presumptively correct on appeal." Id. at *6 (Tipton, J., concurring).

Likewise, in State v. Danial R. Willcutt, No. W2001-02743-CCA-R3-CD, 2002 WL 31698818 (Tenn. Crim. App. Nov. 22, 2002), perm. app denied (Tenn. Mar. 10, 2003), this court affirmed the defendant's conviction for aggravated sexual battery in spite of his challenge to the sufficiency of the evidence. At trial, the minor victim complied with the State's request to indicate the areas where he was forced to touch the defendant's wife, but the appellate record did not reflect what the victim had specifically demonstrated. Id. at *2. This court stated:

> The dilemma confronting us in this case is whether a rational trier of fact could have found proof of the essential element of sexual contact beyond a reasonable doubt. We are unable to make this determination because the record fails to convey a "fair, accurate and complete account of what transpire[d] in the trial court" with respect to this issue. Tenn. R. App. P. 24. The error claimed must be shown in the record and, because the record is incomplete with regard to the alleged error, a reviewing court may not presume that error occurred. Indeed, our law is to the opposite. In the absence of an adequate record on appeal, the appellate court must presume that the trial court's ruling [in this case the jury's verdict] was supported by sufficient evidence. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). . . .
>
> A verdict against the Defendant removes the presumption of innocence and raises a presumption of guilt on appeal, which the Defendant has the burden of overcoming. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citations omitted). We conclude the defendant has not met this burden. Accordingly, the evidence is sufficient to support the verdict.

Id. at *3. The concurrence in this case found the convicting evidence to be sufficient despite the inadequacy of the record in explaining the witness demonstrations. Id. at *4 (Riley, J., concurring). See also State v. Nicholas Williams, No. M1999-00780-CCA-R3-CD, 2001 WL 741935, at *7 (Tenn. Crim. App. July 3, 2001) (affirming four counts of sexual battery based on sufficiency of the evidence where the victim indicated to the jury where she was touched, but reversing one count of sexual battery because it was unclear whether "right here" referred to an "intimate part"), perm. app. denied (Tenn. Dec. 17, 2001).

Here, the following exchange occurred when the State questioned the victim, M.S., about the incident:

Q.      Okay. While you were sitting there on his lap what were y'all doing?

A.      We was watching TV.

Q.      Okay. And while you were sitting there [M.S.], did Mr. Steve do something that you didn't like?

A.      Uh-huh.

Q.      What did he do, [M.S.]?

A.      He rubbed my middle spot.

Q.      He rubbed your middle spot?

A.      Uh-huh.

Q.      What part of your body is your middle spot, [M.S.]? It's okay.

A.      (Witness crying.)

Q.      [M.S.], I'm going to ask you some more questions. Are you okay? I was at the point where I was asking you, you said your middle spot. What part of your body is your middle spot, [M.S.]? Can you point to where that's at?

[STATE]:   Judge, may can she [sic] - - can I have her step out?

Q. Stand right there. Where?

A. (Witness pointing.) Right here.

Q. Okay. When he rubbed your middle spot, [M.S.], was that on top of your clothes or was that underneath your clothes?

A. On top of my clothes.

Q. Okay. And can you show me with your hand how he rubbed your middle spot?

A. (Witness indicating.) Like this.

At the motion for new trial hearing, the trial court overruled the Defendant's motion by stating:

Okay. The Court had an opportunity to hear this case as it was being presented. And, as I recall, the child victim was extremely credible in this particular case. That's contrary to some others I've tried recently. But she was extremely credible.

She clearly indicated she'd been touched inappropriately, whether she said middle spot or whatever, and she demonstrated for the jury where she had been touched and how.

Notwithstanding the lack of specificity in the record, we conclude that the evidence presented at trial, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find the Defendant guilty beyond a reasonable doubt of aggravated sexual battery. Here, the jury considered the evidence and resolved all apparent inconsistencies in favor of the prosecution's theory, finding that the Defendant did in fact have unlawful sexual contact with the minor victim. The Defendant apparently used his fingers to rub an intimate part of the victim above her clothes as she sat in his lap.[3] When the contact occurred, the Defendant was the only adult in the home and he had not been alone with the victim before. The victim testified that she did not like the touching and that she got out of the Defendant's lap and went upstairs to tell the other children. Although the Defendant's daughter, Cassie,

---

[3] Although the victim's demonstration was not memorialized in the trial transcript, the Affidavit of Complaint included in the appellate record alleges that the Defendant used his fingers to touch the victim's vagina over her clothes.

did not witness the incident, she testified that the victim jumped out of her father's lap, ran upstairs to report what happened, and was visibly upset afterwards. The victim said that the Defendant was sorry after she confronted him.

Both T.D. and M.T. testified that the victim started crying when they asked her about what had happened. At trial, the victim began to cry when questioned about the incident. Although the trial transcript does not explicitly describe where the victim pointed in reference to her "middle spot," the jury and the trial court viewed the demonstration at trial and accredited the testimony of the victim, finding that the Defendant did have unlawful sexual contact with the victim's intimate parts above her clothing. The Defendant is not entitled to relief on this issue.

In regard to the Defendant's remaining challenges to the sufficiency of the evidence, we begin our analysis by noting that the testimony of a minor victim, alone, is sufficient to uphold a conviction for aggravated sexual battery. See State v. Smith, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000). While the Defendant asserts that there was no evidence of an "intentional touching" or that the touching was for purposes of sexual arousal or gratification, the victim testified that the Defendant touched her "middle part" and demonstrated to the jury how he rubbed that area. A jury may infer intent from the circumstances, see Hall v. State, 490 S.W.2d 495 (Tenn. 1973), as well as "use their common knowledge and experience in making reasonable inferences from evidence." State v. Meeks, 876 S.W.2d 121, 131 (Tenn. Crim. App. 1993) (concluding that the jury could have drawn on common knowledge to reasonably infer that the defendant grabbed the victim's breast for the purpose of sexual gratification); see also State v. Roy Chisenhall, No. M2003–00956–CCA–R3–CD, 2004 WL 12177118, at *3 (Tenn. Crim. App., at Nashville, June 3, 2004) (examining the language in section 39-13-501(6) and concluding that the statute merely requires touching that may be "reasonably construed as being for the purpose of sexual arousal or gratification" and that there is no requirement that the defendant become sexually aroused or gratified), no perm. app. filed (emphasis added). Accordingly, based on the evidence presented at trial, we conclude that a rational trier of fact could have found beyond a reasonable doubt that there was an "intentional touching" between the Defendant and the victim's "intimate parts," and that the touching "can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" T.C.A. § 39-13-501(2), (6). The Defendant is not entitled to relief on this issue.

**II. Denial of Motion for Judgment of Acquittal.** The Defendant argues that the trial court erred by denying his motion for judgment of acquittal at the close of the State's proof. The State responds that the Defendant waived this issue by presenting proof after the denial of his motion. We agree with the State.

In order to preserve for appeal a denial of a motion for judgment of acquittal at the close of the State's proof, a defendant must stand on the motion and decline to present any proof. See State v. Collier, 411 S.W.3d 886, 893 (Tenn. 2013); Finch v. State, 226 S.W.3d 307, 317 (Tenn. 2007); Mathis v. State, 590 S.W.2d 449, 453 (Tenn. 1979). If the defendant fails to do so, as in this case, the issue is waived on appeal. Finch, 226 S.W.3d at 316-17. Here, the record clearly reflects that the Defendant did not stand on his motion for judgment of acquittal. Rather, he called his daughter to testify on his behalf. Consequently, this issue is waived.

**III. Jury Instructions.** The Defendant argues that the trial court committed plain error when it instructed the jury that it must find "that the defendant acted either intentionally or knowingly" when committing the aggravated sexual battery. In response, the State contends that the Defendant has waived this issue for failure to challenge the jury instructions at trial or in his motion for new trial. Alternatively, the State contends that the Defendant cannot demonstrate plain error. We agree with the State.

Tennessee Rule of Appellate Procedure 3(e) provides, in pertinent part:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e); see also Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Here, the Defendant concedes that he did not challenge the jury instructions at trial or in his motion for new trial. However, he submits that the trial court improperly instructed the jury and that this court should consider the issue under its discretionary "plain error" review.

In discussing "plain error" review, the Tennessee Supreme Court has held:

This Court will not grant relief under plain error review unless five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the

error was so significant that it probably changed the outcome of the trial. If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. The party claiming plain error has the burden of persuading the appellate court.

Hatcher, 310 S.W.3d at 808 (citations and internal quotation marks omitted). Therefore, circumstances requiring plain error relief are rare and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." State v. Adkisson, 899 S.W.2d 626, 642. To warrant reversal, "plain error must be of such a great magnitude that it probably changed the outcome of the trial." Id. (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)).

A defendant has a right to a correct and complete charge of the law. State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000). Accordingly, a trial court has the duty to "give a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (quoting State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30(d)(2). The material elements of each offense should be described and defined in connection with that offense. See State v. Cecil, 409 S.W.3d 599, 610 (Tenn. 2013); State v. Ducker, 27 S.W.3d 889, 899 (Tenn. 2000); State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). "'An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law.'" State v. Majors, 318 S.W.3d 850, 864-65 (Tenn. 2010) (quoting State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005)). Erroneous jury instructions are subject to harmless error analysis. Garrison, 40 S.W.3d at 434; see also Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process").

Here, the Defendant submits that it was plain error for the trial court to instruct the jury that it could find him guilty of aggravated sexual battery if he acted either intentionally or knowingly. He contends that because the State must prove beyond a reasonable doubt an "intentional touching" under Tennessee Code Annotated section 39-13-501(6), it was improper for the trial court to instruct the jury on the lesser mens rea of "knowingly." The Defendant further asserts that, consequently, "there is no guarantee that there is a unanimous verdict instead this verdict can be deemed conjunctive and invalid under our constitution requiring a unanimous verdict."

In the case sub judice, the jury charge tracked the statutory language and the Tennessee Pattern Jury Instructions for aggravated sexual battery. See T.C.A. § 39-13-504(a); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 10.03. The trial court instructed the jury on aggravated sexual battery as follows:

Where appropriate, the following definitions apply in these instructions. You may refer to these definitions when considering the offenses embraced in the indictment.

"Sexual contact" includes the intentional touching of the alleged victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the alleged victim's, the defendant's, or any other person's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

"Intimate parts" includes the primary genital area, groin, inner thigh, buttock or breast of a human being.

"Victim" means the person alleged to have been subjected to criminal sexual conduct.

A person acts "intentionally" when that person acts with a conscious objective either:

1. to cause a particular result; or
2. to engage in particular conduct.

A person acts "knowingly" if that person acts with an awareness either

1. that his conduct if of a particular nature; or
2. that a particular circumstance exists.

Any person who commits the offense of aggravated sexual battery is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

-14-

(1) that the defendant had unlawful sexual contact with the alleged victim, [M.S.], on or about June 2, 2011; and

(2) that the alleged victim was less than thirteen (13) years of age; and

(3) that the defendant acted either intentionally or knowingly.

This court previously held in State v. Parker, 887 S.W.2d 825 (Tenn. Crim. App. 1994), that Tennessee Code Annotated sections 39-13-504 and 39-13-501(6) expressly provide that the element of "sexual contact" in aggravated sexual battery requires a finding of "intentional touching." Id. at 827. However, the statutory scheme does not "plainly dispense" with any culpable mental state as to the other elements of the offense. Id.; T.C.A. § 39-11-301(c) ("If the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state"); see also State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *14 (Tenn. Crim. App. Nov. 30, 2004) ("[W]ith the exception of the intentional touching element in aggravated sexual battery, a jury can find the defendant guilty by determining that he acted intentionally, knowingly, or recklessly as to the other elements"), perm. app. denied (Tenn. Mar. 21, 2005). This court has also held that because the elements of aggravated sexual battery contain differing mental states, the trial court must instruct the jury on the appropriate mens rea for each element. State v. Howard, 926 S.W.2d 579, 587 (Tenn. Crim. App. 1996), overruled on other grounds by State v. Williams, 977 S.W.2d 101 (Tenn. 1998).

After reviewing the record and the relevant law, we conclude that the trial court's jury instructions regarding aggravated sexual battery do not rise to the level of "plain error." See, e.g., Roy Chisenhall, No. M2003–00956–CCA–R3–CD, 2004 WL 12177118 (declining to recognize as plain error jury instructions for aggravated sexual battery that charged that the defendant must have acted either intentionally or knowingly); State v. Joel E. Blanton, No. M2007-01384-CCA-R3-CD, 2009 WL 537558, at *14 (Tenn. Crim. App. Mar. 4, 2009) (no plain error where the jury was instructed that the defendant must have acted either intentionally, knowingly, or recklessly to be guilty of aggravated sexual battery), perm. app. denied (Tenn. Aug. 24, 2009). Here, the jury instructions tracked the statutory language and followed the pattern jury instructions. Furthermore, "sexual contact" was clearly defined to require an "intentional touching." We conclude that the trial court did not err in its jury instructions. Read as a whole, the jury instructions fairly submitted the legal issues and defined the relevant terms. In any event, recognition of an error does not necessarily result in automatic reversal because the error may be harmless. Adkisson, 899 S.W.2d at 642; State v. Joey L. Salcido, No. M1999-00501-CCA-R3-CD, 2001 WL 227357, at *10-11 (Tenn. Crim. App. Mar. 8, 2001) (finding that instructional errors, if any, were harmless and did not

constitute plain error where the jury was instructed that defendant acted either "intentionally, knowingly, or recklessly" in aggravated sexual battery case), perm. app. denied (Tenn. Sept. 17, 2001). Accordingly, the Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record and appropriate authority, we conclude that the evidence was sufficient to sustain the aggravated sexual battery conviction. In addition, the Defendant waived his claim that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof, and the jury instructions did not constitute plain error. The judgment of the Hardin County Circuit Court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE